Argued October 6, affirmed November 16, petition
for rehearing denied December 14, 1955

# PICKER (FORMERLY VOLLENHOVER) v. VOLLENHOVER

290 P. 2d 789

46

*John E. Walker,* Portland, argued the cause for appellant. With him on the brief was Morgan S. Pritchett, Portland.

*Marvin S. W. Swire,* Portland, argued the cause for respondent. With him on the brief were Rosenberg, Swire & Coan and Philip A. Levin, of Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

BRAND, J.

On the 18th day of July, 1949, the plaintiff and defendant were divorced by decree of the Circuit Court of Cook County, Illinois. On 5 August 1952 the plaintiff filed her amended complaint in the Circuit Court of Multnomah County, Oregon, seeking the establishment in that court of the Illinois divorce decree and praying for the enforcement thereof as an Oregon decree. The defendant filed his answer. No reply was filed thereto, and on 13 August 1952 the plaintiff moved for judgment on the pleadings and for an order enrolling the Illinois decree as a decree of the circuit court. On 27 January 1953 the court denied the motion. The court took testimony in January and again in May, 1953, and on 28 May 1953 a second amended decree was entered. The Oregon court found certain of the provisions of the Illinois decree to be "invalid and unenforceable" and refused to establish them as a part of an Oregon decree, but it then proceeded to establish the portions of the Illinois decree which were deemed valid as an Oregon decree. The plaintiff appeals. There was no cross appeal by the defendant.

The question for decision requires that the Illinois decree be examined in some detail. We shall first sum-

marize the portions of the Illinois decree which were incorporated in and established as parts of the Oregon decree. We will then set forth verbatim the portions of the Illinois decree which the Oregon court held to be invalid and which were therefore not included in the Oregon decree.

The Oregon court established the following provisions of the Illinois decree as an Oregon decree:

The marriage is dissolved.

The plaintiff is given custody of the minor child.

Defendant is to contribute $25 per week for the support of the child.

Debts incurred during the marriage are to be paid by defendant.

Plaintiff shall retain certain specified property as her own.

Certain real property is to be sold and proceeds divided equally.

Personal belongings shall remain sole property of each.

Detailed provisions for the education of the minor child are made.

Right of visitation is granted to defendant, the details thereof being specified.

The plaintiff and child may live anywhere in the United States.

Defendant shall pay extraordinary medical and dental expenses of the child.

Moving expenses incurred if the Illinois property is sold shall be shared equally.

Defendant shall pay all of plaintiff's attorney fees in the divorce proceedings.

The parties accept the provisions of the decree and release all other claims as heirs, etc.

The foregoing summary covers roughly those provisions which were contained in the Illinois decree and

which were established as an Oregon decree. The Oregon decree also contained provisions which were not found in the Illinois decree. For example, defendant was directed to pay the $25 per week for the child's support to the County Clerk of Multnomah County, Oregon. The decree also recited that plaintiff has remarried and that defendant has paid plaintiff the sum of $25 a week during the entire year of 1952 and "to and including the date of trial hereof."

The portions of the Illinois decree which were held invalid and unenforceable and which were not established as part of the Oregon decree read as follows:

"That said weekly payments on behalf of the minor child shall be increased in the event that the defendant increases his earnings and said increases shall be on the following basis:

| Weekly payments shall be: | When defendant earns more than: |
| --- | --- |
| $35.00 | $200.00 per week |
| 45.00 | 250.00 per week |
| 55.00 | 300.00 per week |

and in the event that the defendant earns more than Three Hundred and 00/100 ($300.00) Dollars per week, the question of increasing the support and maintenance of the minor child shall be subject to the further order of this Court; in the event that the annual earnings of the defendant drop below Five Thousand Six Hundred and 00/100 Dollars, then and in that event total weekly payments herein provided shall be reduced to Forty and 00/100 ($40.00) Dollars per week for support and maintenance of the minor child and plaintiff, and it shall be construed as to be equally divided between said minor child's support and said plaintiff.

\* \* \* \* \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant assign exist-

ing insurance in the amount of Ten Thousand ($10,000.00) Dollars and to designate as sole beneficiary of said insurance the minor child, JILL DIANE VOLLENHOVER; that this designation shall be irrevocable until she reaches the age of Eighteen (18) years; that the defendant is not to make any policy loans on said insurance prior to the Eighteenth birthday of the minor child JILL DIANE VOLLENHOVER, provided, however, that if necessity compels or requires a policy loan, that then adequate additional provisions shall first be made by the defendant which shall be made payable as aforesaid to the minor child; that defendant shall authorize the insurance company or insurance companies involved to issue duplicate notices of premiums due and receipts for premiums paid to the plaintiff.

\* \* \* \* \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the amount of earnings of the defendant shall be reported to the plaintiff by the delivery of the original of the present W-2 Form of the Internal Revenue Department, or any other form substituted or used in lieu thereof, for a report by the employer or employers of the defendant. The delivery of a photostatic copy of the aforesaid form shall be deemed to be in compliance with this provision."

The plaintiff presents a single assignment of error which reads as follows:

"The court erred in denying enrollment of the entire Illinois Decree as a decree of a sister state and in overruling plaintiff's motion for judgment on the pleadings."

In a brief of exceeding brevity the plaintiff argues that the Illinois court had jurisdiction of person and subject matter, and she treats the contention of the defendant as an attack, not upon jurisdiction, but upon

the manner in which jurisdiction was exercised. She contends that the entire Illinois decree should have been enrolled in Oregon and that in refusing to establish the entire decree in Oregon the Oregon court was attempting to act "as an appellate tribunal to correct the possible errors of the Illinois court." She then cites *Reed v. Hollister,* 95 Or 656, 188 P 170, which holds that no appeal lies from the courts of a sister state to the courts of Oregon. We agree that the Illinois court had jurisdiction of person and subject matter. Jurisdiction of subject matter was conferred on the court by Smith-Hurd, Illinois Statutes, Perm Ed, Ch 40, § 5, and the defendant entered a general appearance in the case. We also agree that the Oregon court could not sit to correct the possible errors of the Illinois court.

The Illinois statutes confer upon divorce courts broad general powers to "make such order touching * * * the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just. * * *" Laws of Illinois, 1947, Divorce, p 819. The same provision appears in the 1949 Laws, page 729. Smith-Hurd, Illinois Anno Stat, Perm Ed, Cumulative Annual Pocket Part, Ch 40, § 19. Obviously, an Oregon circuit court can not reverse an Illinois decree on the ground that it is not "fit, reasonable and just." Since there was no appeal, the Illinois divorce decree was res judicata.

It is of interest to note that after the entry of the Oregon decree the plaintiff brought action in the Circuit Court of Cook County, Illinois, to recover the amount due under the original divorce decree. The arrearage was determined and adjudicated on the basis of the sliding scale, as set forth in the decree. The

defendant Vollenhover appealed and the Illinois appellate court held that the divorce decree was not too indefinite or uncertain to be enforceable and the adjudication of the amount due under its provisions was affirmed. The subsequent litigation in Illinois merely confirmed the validity of the divorce decree which we were already required to recognize as a valid Illinois decree, notwithstanding the unusual provisions thereof which established a sliding scale for the future determination of the amount of support money.

Plaintiff's opening brief fails to apprehend the real question in this case. The Illinois decree was valid in Illinois and has been enforced there. Our question is whether in view of its peculiar nature the Illinois decree should be enrolled in Oregon and given the force and effect of an Oregon decree, and if so, then to what extent and by what procedure. A further question is suggested: Assuming that the defendant's decree of a sister state is entitled to enrolment as an Oregon decree, can the Oregon court enroll a part only of the foreign decree, omitting material portions thereof?

In his answering brief the defendant contends that the circuit court of Oregon properly omitted portions of the Illinois decree because the Illinois court had exceeded its powers. At the oral argument, however, the defendant, being influenced by the subsequent litigation in Illinois, expressly conceded that the divorce decree was valid in Illinois. He now contends that the Oregon court was not required to enroll or enforce the Illinois decree under the Full Faith and Credit clause of the Federal Constitution and that it should not enroll or enforce the Illinois decree under the principles of comity between states. These are the real issues in the case.

We will first consider the nature of the proceedings

as shown by the complaint. It is therein alleged that all required weekly payments for child support have been paid through the 31st day of December, 1950, at the weekly rate of $25. After December 31, 1950, the defendant "did submit W-2 withholding form and thereafter did pay the lump sum of $520.00 as adjustment between said weekly payments and the amount shown by said W-2 withholding form." During 1951 the defendant paid $35 per week, and

> "has refused and now refuses to submit to plaintiff his W-2 withholding form of the Internal Revenue Department for the year 1951, or any other information whereby the amount of defendant's income for the year 1951 can be determined; * * * that by the terms of said decree said minor child is entitled to such additional payment for the year 1951, as is reflected by increased earnings of defendant over and above the sum of $200.00 per week; * * * that any such additional compensation due to plaintiff on behalf of said minor child is now past due."

It is further alleged that the defendant has refused to assign existing insurance in the amount of $10,000 to the minor child and that plaintiff has expended $44 for extraordinary medical and dental expenses which the defendant has refused to pay. It will be observed that, with the possible exception of the $44 item, there is not a single allegation setting forth what specific amount, if any, has accrued and is due. It does not specifically allege that any amount is due except the $44.

■ This is not the typical case in which a plaintiff sues to recover accrued and unpaid instalments which have vested pursuant to a decree of a sister state providing for such instalments for the support of a minor child. If this were such a case the remedy would be by

an action at law based on the foreign judgment and under the provisions of ORS 43.180. In such typical cases where the instalment under the foreign decree has accrued and is unpaid and is not subject to change by the courts of the sister state, the amount due becomes a vested right and this court would be bound to enforce the judgment of the sister state under the Full Faith and Credit Clause of the Federal Constitution and under ORS 43.180 which was enacted to implement the provisions of the Full Faith and Credit Clause of the Constitution. That statute provides that:

> "The effect of a judicial record of a sister state, the District of Columbia or a territory of the United States is the same in this state as in the place where it was made, except it can only be enforced here by an action, suit or proceeding, and except also the authority of a guardian, committee, executor or administrator does not extend beyond the jurisdiction of the government under which he was invested with his authority." ORS 43.180.

For convenience we shall follow the common practice of referring to a decree of a sister state as a foreign decree. In the typical case the appropriate procedure under the statute is to bring an action at law upon the foreign decree to enforce by judgment here the accrued indebtedness. Here, however, the proceeding is not to enforce a known debt but to secure the aid of an Oregon court of equity in determining whether there is a debt and if there is, then to adjudicate its amount and enforce its payment and also to enforce future payments as they accrue. Such future payments as decreed by the Illinois court are subject to modification by the divorce court of that state. The Illinois statute provides that:

> "* * * Irrespective of whether the court has or has not in its decree made an order for the pay-

ment of alimony or support, it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just * * *." Laws of Illinois, 1947, p 819.

A similar provision appears in Smith-Hurd Illinois Ann Stat, Ch 40, § 19, and in the amendment thereto. See Laws of 1949, § 1, p 729.

The Oregon statute, like the Full Faith and Credit Clause of the Federal Constitution, refers to the effect to be given here to judgments and decrees having the quality of finality in the state where rendered. *DeVall v. DeVall,* 57 Or 128, 134, 109 P 755, 110 P 705.

In a scholarly and comprehensive opinion by Mr. Justice HARRIS, this court said:

"* * * While the judgment of one state is entitled to receive the same faith, credit and respect that is given to it in the state where rendered, it is not entitled to any greater effect or finality than would be accorded to it in the state where rendered; and, therefore, if the judgment is conclusive in the home state it is equally conclusive in the sister state; but if it is inconclusive in the home state, it is likewise inconclusive in the sister state: 15 R.C.L. 928. Expressed in general terms the rule is that in order to maintain an action in one state upon a money judgment recovered in another state, such judgment must be a final adjudication in full force in the state where rendered and capable of being enforced by final process; and ordinarily it should create a definite and absolute indebtedness against the judgment debtor: * * *." *Levine v. Levine,* 95 Or 94, 98, 187 P 609.

*Levine v. Levine,* supra, was again before this court on a second appeal when it was held to have fixed the law of the case and to be binding, not only upon the parties but upon the courts of this state. It has been cited with approval in *Cousineau v. Cousineau,* 155 Or 184, 63 P2d 897, and in *State ex rel. Weingart v. Kiessenbeck,* 167 Or 25, 32, 114 P2d 147. See also, *Cogswell v. Cogswell et al.,* 178 Or 417, 167 P2d 324; *Shannon v. Shannon,* 193 Or 575, 238 P2d 744, 239 P2d 993; Restatement of the Law, Conflicts of Laws, § 434, and comment thereon, §§ 435, 437, 438. We quote further from the Restatement:

"A valid foreign judgment for the payment of money will not be enforced unless the amount to be paid is fixed in the judgment, or has since become fixed under the law of the state which rendered it." § 436.

The recognition of foreign decrees for alimony or child support is governed by other rules than those which apply to adjudications terminating the marital status, the former being decrees in personam while the latter are in rem. 3 Nelson on Divorce, § 33.44, p 521. The same author continues:

"In determining whether an alimony decree, and particularly one providing for the future payment of alimony in instalments, is of the requisite finality to entitle it to recognition under the Full Faith and Credit Clause, the ordinary test is whether the decree is subject to modification or vacation by the court that rendered it, pursuant to a reservation in the decree itself or under a statute empowering the court to modify such decrees." 3 Nelson on Divorce, 33.46, p 525.

Foreign decrees which are subject to modification as regards future payments are not entitled to full faith and credit and their enforcement here depends only

upon principals of comity. *Willard v. Rodman,* 233 NC 198, 63 SE2d 106. Again we quote from the Restatement of Conflict of Laws, § 434, where it is said that the Equal Protection Clause requires the enforcement of a judgment of a sister state which imposes a duty to pay money if the judgment complies with the following requirements:

"(a) it is final (see § 435);
(b) it is certain in amount (see § 436);
(c) it is unconditional (see § 437);
(d) it has not been vacated (see § 438);
(e) execution has not been superseded in the state which rendered it."

It follows that as to past-due instalments under a foreign decree which complies with the requirements set forth supra, no problem arises. They must be enforced here and may be enforced by an action at law or in a proper case by a suit in equity. 3 Nelson on Divorce, § 33.51. When a plaintiff seeks to have a foreign decree entered as an Oregon decree for the purpose of enforcing future payments not yet accrued, she may, under the rules of comity, sue in equity on the foreign decree. 3 Nelson on Divorce, § 33.52.

Although there is respectable authority to the contrary, it is the rule in a number of states that a foreign decree may be established as a local decree for the purpose of enforcing it as a continuing mandate with reference to future payments, even though it may be subject to modification in the foreign state.

Moved by considerations of public policy and for the purpose of preventing the establishment in Oregon of a haven of refuge for delinquent ex-husbands, we have adopted the rule of comity to the extent shown in *Cousineau v. Cousineau,* supra. In that case the plaintiff had secured a divorce in the state of California.

Thereafter the defendant became a resident of Oregon and the plaintiff brought suit here for a double purpose; first, that the final judgment of divorce be established as a domestic decree and that she have judgment for the amount due and owing thereunder. Thus far the action of the Oregon court was controlled by the Full Faith and Credit Clause. Second, the plaintiff asked for further relief in equity and the circuit court of Oregon entered a decree requiring the defendant to make future payments as provided in the California decree. Upon appeal, the court held that the California judgment was a final adjudication concerning all unpaid alimony and support money and that the Oregon court was required to give judgment against the defendant for the total amount unpaid under the Full Faith and Credit Clause. We then proceeded to consider whether the defendant should also be required by an Oregon decree to make future payments as they accrued and to render available to the plaintiff the remedies of a court of equity for the future enforcement. We considered the decisions both pro and con and held that the Oregon circuit court did not err when it adopted the provisions of the California decree requiring future payments, and we further indicated that contempt proceedings would be available for the enforcement thereof. We recognized that the California court retained the power to modify its provisions concerning future payments and we also recognized thereby that our action pertaining to future instalments was based upon principles of comity and not by reason of the Full Faith and Credit Clause. We said:

"* * * Whenever the California decree is modified, a similar modification will at once be made in the Oregon decree." *Cousineau v. Cousineau,* 155 Or 184, 202.

There is some language in *Levine v. Levine,* supra, which might be taken to imply that an Oregon court would be without power to adopt a foreign decree giving it the effect of a domestic one, unless it was entitled to full faith and credit under the constitutional provision. We think, however, that *Levine v. Levine* and *Cousineau v. Cousineau* must be harmonized. In the Levine case the court was considering an action at law brought in Oregon to enforce accrued instalments. The court held that a judgment of a sister state must be a final adjudication in the state where rendered if it is to be protected under the Full Faith and Credit Clause. It did not intend to hold that an Oregon court was without power to adopt a foreign decree for future payments under the rules of comity. It said that if the foreign decree was not final "then neither the United States Constitution nor the principle of comity *compels* the courts of this state to enforce *that part* of the decree * * *." (Italics ours.) 95 Or 94, 101. We note that the word used was "compels", not "permits". (Contra, see comment in 132 ALR 1274.)

■ We adhere to the holding in *Cousineau v. Cousineau.* The foreign decree on which the Oregon suit was brought in that case was properly adopted as a domestic decree under the rules of comity. *Cogswell v. Cogswell et al.,* supra, 178 Or 417, 167 P2d 324; *Sackler v. Sackler,* (Fla) 47 So2d 292, 18 ALR 856; and Annotation 18 ALR2d 862. See also, 132 ALR 1272; 6 ALR2d 1277 (annotation); *Rule v. Rule,* 313 Ill App 108, 39 NE2d 379; *Sorenson v. Sorenson,* 65 SD 134, 272 NW 179.

The Cousineau case involved none of the novel features which are presented in the pending litigation. It involved only the duty to enforce a debt, the propriety of adopting the California provision as to future

payments and the availability of the usual Oregon procedure for enforcement by contempt. We were not required in that case, and are not required in this one, to determine whether the Oregon court had power to modify its own decree as to future unaccrued payments on proof of changed circumstances, or whether the Oregon court would be limited to a modification of its decree pursuant to a modification made in the sister state. The question now before us requires a determination as to how much further we should go in adopting provisions of a foreign decree which are unknown to the Oregon practice or contrary to our established policy. The Supreme Court of the United States threw some light upon the problem by pointing out the distinction between the elements of judgment on the one hand, and execution thereof on the other, as found in a divorce decree.

In *Lynde v. Lynde,* 181 US 183, 45 L ed 810, the plaintiff secured a decree of divorce in New Jersey which directed the defendant to make periodical payments of alimony. It also provided that the weekly payments should be valid liens on the defendant's real estate; that the defendant give bond to secure payments of the future instalments, and the decree further authorized the issuance of writs of sequestration, receivership or injunction by way of enforcement of the decree. Future payments were subject to modification. The New York trial court proceeded to enforce the procedural features found in the New Jersey decree but on appeal the higher New York court allowed the plaintiff only a judgment for the past-due and unpaid instalments. On appeal to the United States Supreme Court it was held:

"* * * 'The judgment is made a debt of record, not examinable upon its merits; but it does not

carry with it, into another state, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there, and can only be executed in the latter as its laws may permit.' * * *

* * * * *

"The decree for the payment of $8,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision of the payment for alimony in the future was subject to the discretion of the court of chancery of New Jersey, which might at any time alter it, and was not a final judgment for a fixed sum. The provisions for bond sequestration, receiver, and injunction, being in the nature of execution, and not of judgment, could have no extraterritorial operation; but the action of the courts of New York in these respects depended on the local statutes and practice of the state, and involved no Federal question." *Lynde v. Lynde,* 181 US 183, 186, 45 L ed 814.

The rule of the Lynde case was clarified in *Sistare v. Sistare,* 218 US 1, 26, 54 L ed 905, 914, where it was said:

"Contenting ourselves in conclusion with saying that, as pointed out in Lynde v. Lynde, although mere modes of execution provided by the laws of a state in which a judgment is rendered are not, by operation of the full faith and credit clause, obligatory upon the courts of another state in which the judgment is sought to be enforced, nevertheless, if the judgment be an enforceable judgment in the state where rendered, the duty to give effect to it in another state clearly results from the full faith and credit clause, although the modes of procedure to enforce the collection may not be the same in both states."

The distinction between the enforcement of the substantive duty imposed by a foreign decree and the manner and procedure by which it is enforced has been recognized in many decisions.

In *Bauernschmidt v. Safe Deposit & Trust Co. v. Baltimore,* 176 Md 351, 4 A2d 712, the Maryland court said of a California decree:

"* * * To give it the force of a judgment in another state, it must be made a judgment there, and can only be executed in the latter as its laws may permit. * * *"

The case of *Johnson v. Johnson* was twice before the Supreme Court of South Carolina; 194 SC 115, 8 SE2d 351; 196 SC 474, 13 SE2d 593. In the first case plaintiff set forth a decree of a Florida court and sought judgment in South Carolina for accrued unpaid instalments and for all future monthly instalments as they should become due under the Florida decree. As in the pending case she asked that the Florida decree be established in South Carolina to be enforced by appropriate equitable remedies as was usual in domestic decrees in the latter state. Judgment (decree) was entered by the South Carolina court in accordance with the prayer. It was held that the Florida decree was final not only as to all accrued and past-due instalments but also as to all instalments to become due in the future. From this first decree no appeal was taken. The quality of finality was thus established as the law of the case. Thereafter the case again came before the lower court of South Carolina. Defendant sought a reduction of the required payments and plaintiff sought enforcement of them by contempt proceedings. The issues were referred to a master to take testimony as to defendant's changed financial status,

and plaintiff appealed. Questions of great importance were discussed by the South Carolina Supreme Court, but our immediate interest in the decision is disclosed by the following quotations from the opinion:

"* * * The real question before that Court had to do with the method of enforcement to be followed, and not with the modification of the decree.

\* \* \* \* \*

"While the Federal Constitution places judgments of sister states on the same footing in most respects as domestic judgments, and grants them a general faith and credit, it is clear that when the issue has to do with the method of enforcement no greater effect need be given to an alimony decree of a sister state than is given to similar judgments in the state where such foreign judgment may be established. 31 Am.Jr., § 533, p. 144. * * *

\* \* \* \* \*

"* * * the extent to which we may go in the enforcement of such judgment must be determined by our own laws and usages. Such decree draws to itself, when made a local judgment here, similar equitable remedies for enforcement as are customary in the enforcement of decrees for alimony in our local Courts. We held this in Johnson v. Johnson, supra."

It is of interest that the South Carolina court proceeded further to consider the matter of enforcement by contempt proceedings. Treating the Florida decree for future instalments as a finality, the court held that such instalment provisions were binding upon it and that judgments should be entered as the instalments became overdue, but in the matter of enforcement by contempt the trial court might refuse to find defendant in contempt if it found him unable to pay the full amount and might permit lesser payments. The case differs from the instant case in that the Florida decree

for future payments was apparently considered binding under the Full Faith and Credit Clause, whereas in the pending case the Illinois provisions for future payments lacked finality. The case is cited here as a strong authority for the proposition that the manner and extent of *enforcement* is controlled by the law of the forum and not by the law of the sister state where the divorce was granted.

In *Glanton v. Renner*, 285 Ky 808, 149 SW2d 748, the Supreme Court of Kentucky held that it would enforce a foreign divorce calling for instalment payments in the manner prevailing in Kentucky as to Kentucky decrees, including enforcement by contempt if found to be appropriate. It was empowered to do this regardless of whether the Full Faith and Credit Clause applied. It then proceeded to consider whether the defendant had established his inability to comply with the decree.

The case of *Worthley v. Worthley*, Cal, 283 P2d 19, illustrates the difficulties inherent in the application of the rules of comity. The plaintiff in California sought both prospective and retroactive enforcement of a New Jersey decree which was subject to modification in New Jersey in both respects. The California court therefore held that the Full Faith and Credit Clause did not apply. It cited *People ex rel. Halvey v. Halvey*, 330 US 610, 91 L ed 1133, to the effect that

> ''as to either prospective or retroactive enforcement of such obligations, this state 'has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' ''

The California court then referred to *Biewend v. Biewend*, 17 Cal2d 108, 109 P2d 701, 132 ALR 1264;

*Cousineau v. Cousineau,* supra, and many other authorities. It overruled that portion of the Biewend case which held that the foreign decree should be established as a decree of the California court "until such time as the Missouri court modifies its decree" and held that in cases of this kind either party could litigate in California a claim for modification of the provisions of the sister state decree which had been adopted as a California decree on proof of changed conditions, without awaiting action by the court of the sister state. These problems presented by conflicting decisions concerning the proper course of action to be taken after a foreign decree has been entered as an Oregon decree will inevitably require determination in future cases and might require decision here but for one fact; the Oregon decree which adopted a part only of the Illinois decree has become final, there being no appeal by the defendant therefrom. Whether and in what event it should be enforced by contempt, and whether on proof of changed conditions it should be modified here in the absence of a prior modification in Illinois, is not now before us. Sufficient unto the day are the legal problems thereof. Under the authorities cited we presently go to the extent of holding that the *enforcement* provisions of the foreign decree do not necessarily control the manner of enforcement here. Whether the substantive provisions concerning the amount of future monthly payments can be modified here as well as in Illinois, and, to what extent contempt procedures should be employed on proof of inability to pay, are questions for future consideration.

It is obvious that the provisions of the Illinois decree requiring the defendant to submit W-2 form of the Internal Revenue Department and the provisions concerning the assignment of insurance to the minor

child and the provision prohibiting defendant from making any "policy loans" and requiring the defendant to authorize the insurance company (unnamed and unidentified) to issue duplicate notices, etc., are all intimately involved in the enforcement and execution of the Illinois decree and under the authorities cited would not be binding on the Oregon court even if the substantive provisions concerning the amount of future payments were protected by the Full Faith and Credit Clause, which they are not. A fortiorari the Oregon court is not bound to adopt and enforce such provisions when guided only by the rules of comity and public policy.

We next approach the crucial question as to whether the Oregon court should have adopted as its own decree the provisions fixing a sliding scale of payment dependent upon the rise or fall of the income of the defendant or any other substantive provisions of the Illinois decree. We are considering the duty of an Oregon court of equity (not a statutory divorce court) under rules of comity.

The enforcement of sliding-scale decrees of sister states presents a novel question. We find one case in a court of first instance in which the question was considered. We cite it for the weight of its sound reasoning only.

A Florida divorce judgment

"directed husband to pay $400 monthly to wife and in addition 22–1/2 per cent of future increase, if any, in salary received by husband up to but not in excess of aggregate yearly salary of $40,000 and authorized husband to withhold from monthly payments 22–1/2 per cent of amount of reduction in salary, if any, and required husband to pay insurance premiums, amount of which was not given, and provided that, should form of compensation of

husband be changed, husband's payment to plaintiff should equal 22-½ per cent of his earnings, the provision for payment of alimony * * *.''

Action on the Florida decree was brought in the New York court, *Preston v. Preston,* 27 NY Supp2d, 176 Misc 478. That court recognized the general rule to the effect that a judgment or decree of a sister state ''will be carried into judgment in any other State to have there the same binding force that it has in the State in which it was originally given.'' (Citing *Barber v. Barber,* 21 How 582, 591, 16 L ed 226.) But it also relied upon the rule as stated in Freeman on Judgments, 5th ed, §§ 1452, 1453, pp 2987, 2988, citing cases, as follows:

''But the judgment must, of course, possess those characteristics generally essential to actionability. In other words, it must, as in the case of domestic judgment, be definite, final and unconditional, capable of enforcement by final process, and valid in the sense of not being void for lack of jurisdiction.''

The court also cited the Restatement of the Law of Conflict of Laws, § 436, quoted supra.

The New York court then said:

''The judgment on which this action is brought lacks finality, for it fails to direct the payment of a fixed sum, or a basis within the judgment on which to compute a specific amount of alimony without resort to evidentiary facts extraneous to the decree to find a medium by which to begin computation for fixation of defendant's ultimate liability for alimony for a given period. True it is that the judgment mentions a sum for which the defendant is liable to pay monthly to the plaintiff, but the related matters in respect to alimony cannot be ignored since they are essential to the ascertainment of what is due or to become due under the

decree. Thus, it is apparent that independent of the judgment, inquiry into the particular facts and circumstances existing at a particular time must be made and from the facts and circumstances ascertained determine which category of the judgment applies to the payments of a definite sum as alimony, since the judgment specifies different amounts under different circumstances as the basis for determining what the defendant shall pay as alimony. Furthermore, no mention is made in the judgment as to what is the amount of the insurance premiums which the defendant is obligated to pay on the amount of insurance stated in the judgment.''

It was held that such a decree was not a final judgment capable of being enforced in New York and was not entitled to full faith and credit. The court denied plaintiff's motion for examination of the defendant before trial and granted defendant's motion to dismiss the complaint. On appeal the decision dismissing the complaint was reversed and the appellate court held that plaintiff was entitled to judgment for the *past* due instalments. Nothing was said inconsistent with the ruling of the trial court as to the lack of finality in respect to the application of the sliding-scale provisions.

In the instant case there is no allegation that any instalment required under the Illinois decree is overdue and owing in an amount fixed in the judgment or which has since become fixed in Illinois. The plaintiff is seeking a discovery of defendant's income at various periods in order that the Oregon court, not the Illinois court, may arrive at a fixed sum. The amount accrued under the Illinois decree is not determinable by inspecting the decree in Illinois any more than in Oregon. In either state evidence extrinsic of the decree would be required before a sum definite in amount could be adjudicated.

A consideration of the law of this state pertaining to allowances for child support will disclose the essential differences between the Oregon system and that of Illinois, as exercised in this litigation. These differences will control our decision as to the propriety under rules of comity of adopting here the sliding-scale provisions which were at the heart of the Illinois decree.

■ The statutes of this state provide for "the recovery from the party at fault * * * such amount of money, in gross or in instalments, or both, as may be just and proper for such party to contribute toward the nurture and education of such children." ORS 107.100 (b). Under our practice the fixing of the amount of support is a matter to be determined in the exercise of sound judicial discretion in the light of existing conditions at the time of the determination as shown by the evidence.

> "In providing for the future care and custody of minor children, the court is vested with large discretion, but such discretion is judicial and must be based upon evidence introduced in the case. His decision in the matter is subject to review in this court. *. * *" Nelson v. Nelson, 180 Or 275, 176 P2d 648.

Each case depends upon its own facts as found by the court. Upon the issue of support we have considered the financial condition of the plaintiff; the age and capacity for education of the child; its health, necessity for medical attention, and the like. We have considered the costs of living; the earnings of the ex-husband; his capital assets; the amount of his income tax; his other financial obligations, and in general, his ability to pay. We have even held that in determining the amount of support money "the needs of society and

government, as well as the needs of the family, must be taken into consideration." Many other circumstances have been considered relevant. On the other hand, where there was no testimony as to what was proper for the support of the child, we said, "Under these circumstances we must leave the question of support for the child open." See, *Strickland v. Strickland,* 183 Or 298, 303, 192 P2d 986; *Jackman v. Short,* 165 Or 626, 109 P2d 860; *Greene v. Greene,* 123 Or 608, 262 P 943; *Steele v. Steele,* 96 Or 630, 190 P 716; *Taylor v. Taylor,* 47 Or 47, 81 P 367; *Udy v. Udy,* 195 Or 156, 244 P2d 615.

The fact that the court must determine the issue of support on the basis of the evidence presented does not mean that the support order may not look into the future. It does mean that the looking into and providing for the future must be determined by the evidence of the present.

The Oregon statute ORS 107.130 authorizes the court to modify decrees for future payments not yet accrued but we have firmly adhered to the rule that a provision in a decree for the support of minor children will be modified "only on a showing of a change in circumstances" at the time the modification is made. *Norris v. Norris,* 182 Or 101, 186 P2d 67.

In *Neil v. Neil,* 112 Or 63, 228 P 687, this court had before it a divorce decree somewhat similar to the Illinois decree in the pending case. The court said:

"That part of the order providing for the increase in the allowance in case of a change of residence by the plaintiff is improper. The court should not attempt to anticipate the changing conditions and contingencies in awarding the custody of minors and providing for their maintenance. Decrees making such awards are always subject to

modification and it is impossible for a court to provide in advance for changes that may occur. The welfare of the child is the prime consideration in all such matters. Modification of a decree awarding the care, control and custody, and providing for the maintenance of children should not be made except upon a proper showing at the time the modification is prayed for: 9 R.C.L. 476, § 291.''

 The practice in this state clearly establishes the procedure to be followed in these cases. At the time of divorce the court should not lay down rules for the future whose propriety would depend on circumstances materially different from those shown by the evidence and which can not reasonably be predicted from the evidence. In particular, it should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of the earnings of the defendant. The original decree retains its vitality unless and until the court on proper showing finds that on all of the evidence presented a change in support is required. A provision such as was made in the original Illinois decree is not only based on speculation as to future events,—it is also based on the assumption that a change in one only of the many circumstances which may be relevant to the issue shall be conclusive. A change in defendant's income occurring in the future would determine his obligation to pay, regardless of possible changes in the needs of the child or in the capital assets of either party or in any or all other circumstances which our court has deemed relevant on such issue.

 To adopt as an Oregon decree sliding-scale provisions for the future which are geared to a single one of the circumstances which are relevant to show changed conditions would be contrary to the estab-

lished policy of this state and is not required by the general principles pertaining to comity between states.

The trial court was not required to adopt, or if adopted, to enforce the provisions which it found in the Illinois decree and which adjudicated the future duty of the defendant on the basis alone of the rise or fall of his income. Nor was it required to enforce the provisions of the Illinois decree which related to the methods of executing that decree. The trial court did adopt the measure of payment established in Illinois and there applicable at the time the decree was entered. Since the defendant has not appealed from that order, it has become final. Whether and by what procedures in Illinois or here the Oregon decree should be enforced and whether and by what procedure in Illinois or here the Oregon decree may be changed to meet changed conditions is not before us for present determination.

The decree of the circuit court is affirmed without costs to either party.