Argued July 20, affirmed as modified October 30, reconsideration denied December 5, 1978

In the Matter of the Marriage of
DEBONNY, *Appellant,*
*and*
DEBONNY, *Respondent.*
(No. D7704-05268, CA 10257)

585 P2d 742

Paul J. Kelly, Jr., Portland, argued the cause for appellant. With him on the brief was Glasgow & Kelly, Portland.

Allen G. Drescher, Ashland, argued the cause and filed the brief for respondent.

Before Thornton, Presiding Judge, and Tanzer and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

In this appeal from a dissolution decree, husband contends that the trial court erroneously relied upon a predissolution "agreement" entered into by husband and wife in framing its decree, claiming the "agreement" was unjust under the circumstances. He also contends that the awards of spousal support and lump sum benefits to wife, and child support, are not just and proper.

Husband and wife were 34 and 29 years old respectively at the time of trial, and were married in 1970, after having been together for one year; they separated after five years, approximately two years before this proceeding was commenced. Wife brought a daughter, now ten years of age, to the marriage and husband adopted her. Husband had received his training in community planning, but was not employed at the time of the marriage. Wife was employed as a waitress, and supported the family for the three months prior to husband's first employment in his profession.

Thereafter, husband was employed in positions in which he earned approximately $20,000 per year, with the exception of a period of about four months between jobs, during which wife provided the necessary income. Wife was active in the various communities where the family resided in an effort to aid husband in his politically-oriented job. At the time of trial, wife was employed part-time, earning about $400 per month.

In September of 1975, the parties separated, and amicably divided their assets: wife received most of the family furniture and an automobile; husband retained an automobile and continued to reside in the family home for approximately eight months, after which the house was sold, and the equity of approximately $3,000 was divided. The parties also agreed to an equal division of a personal income tax refund, of about $1400, and a savings account of about $800.

During that time, wife presented to husband at his office a written instrument under which husband would guarantee a level of support for her and the parties' daughter. Husband redrafted the proposal without changing the dollar amounts, and when wife returned the afternoon of the same day, they both signed it before a notary, who attested to its execution. The document, referred to by the parties as the "agreement" provides:

### "AGREEMENT

"I enter into this agreement with the intent of securing a level of financial subsistance [sic] support for Sue A. DeBonny and Rachel A. DeBonny that will insure such support will be available to them when needed, and as I am able to provide, within the limits set here-in.

"I Paul A. DeBonny agree to pay Sue A. DeBonny or Rachel A. DeBonny, the sum of three hundred dollars ($300.00) per month for the support of Rachel A. DeBonny, until her eighteenth birthday or high school graduation, or until such time as another party accepts responsibility for financial support. Payments will be adjusted by ten dollars ($10.00) for each one thousand dollar increase in my basic annual salary:

"Further; I agree to pay one hundred dollars ($100) per month for subsistance [sic] support to Sue A. DeBonny, until such time as the payments for her support shall be deemed unneccessary [sic] for such purpose through adjudication, or mutual agreement of myself and Sue A. DeBonny, or until such time as she remarries. Payments shall begin at the time we become separated;

"Further; I agree to pay a total of six thousand dollars ($6000.00) which will be due and payable January 1, 1981, to Sue A. DeBonny. Method of payment shall be negotiated by mutual agreement of myself and Sue A. DeBonny apart from this document, and integral to the financial assignments of this agreement.

"All financial responsibilities incured [sic] by me within this agreement are subject to a proportional adjustment should my monthly salary rate be reduced."

After the parties executed the above "agreement," the wife moved from the family house, and husband proceeded to make the stipulated payments through

July of 1976. In August, September and October of 1976, husband reduced his payments to $150, and from November, 1976, through December, 1977, husband paid $100 monthly. For a short period after separation, husband also paid several bills of about $1,000 incurred by wife, and during the period from September through November, 1975, wife wrote checks on the couple's joint checking account for approximately $1,000.

The parties do not raise, and we do not decide, the legal effect of the "agreement" as an enforceable contract. Both the trial court, and this court on *de novo* review, are concerned here solely with the "just and equitable" payment of support to a party, ORS 107.105(1)(c), and the "just and proper" payment of support for the minor children of the parties, ORS 107.105(1)(b). As we view the trial court's decree, it treated the "agreement" as evidence of what the parties thought was an equitable arrangement for support, but concluded that in light of the passage of over two years, husband's payment of substantial sums in support, and wife's testimony that she understood the agreement to provide spousal support for only one year, it would not be equitable to adopt the exact terms of the "agreement." Accordingly, the decree awarded spousal support of $100 per month for one year, and child support in the amount of $250 per month for one year, escalating to $300 at that time. Wife's lump sum award of spousal support was reduced to $4,000 payable January 1, 1981, taking into account the $2,000 in benefits already received.

■ We agree with the trial court's general approach: husband's obligation to pay the lump sum is a form of spousal support intended to enable the wife to attend school when the child becomes old enough, and we see no necessity for continuing indefinitely wife's monthly spousal support independent of the lump sum award. The decree limits those payments to the year 1978, and we think that those payments, together with those she has already received, are just and proper to enable her

to adjust her life-style and make the transition from wife to single parent. Husband's willingness and ability to pay a lump sum in 1981, by way of support, to permit wife to acquire additional education are evidenced by the "agreement," and the reduction of the amount by benefits wife has heretofore received, make the lump sum awarded by the decree just and proper.

As to child support, husband's primary argument is that the clause raising child support from $250 to $300 on January 2, 1979, is improper without a demonstrated "change in circumstances." While we do not agree with that contention because evidence of a change in circumstances is only required to modify a decree, *Garrison and Garrison,* 28 Or App 297, 559 P2d 513 (1977), and there is no modification involved in the instant proceedings, we see no justification at this time in providing an automatic increase over what we consider just and proper support at this time. If circumstances change in the future justifying an increase or decrease in child support, modification of the decree may be considered at that time.

Affirmed as modified. No costs to either party.