Argued and submitted July 25, affirmed as modified November 24, 1980

# In the Matter of the Marriage of

## MAURER,
### *Respondent,*
### *and*
## MAURER,
### *Appellant.*

(No. 15-79-00038, CA 16604)

619 P2d 964

356

Stanton F. Long, Eugene, argued the cause for appellant. With him on the brief were Joyce Holmes Benjamin and Johnson, Harrang, Swanson & Long, Eugene.

Lee A. Omlid, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

Husband appeals from a decree of dissolution assigning as error the following:

1)    Awarding permanent spousal support;

2)    Valuing husband's veterinary opthalmology practice in a manner that attributes too great a value to the goodwill of such practice; and

3)    Providing for annual increases in the amount of child support where there was no evidence to establish the fact or level of inflation.

This is a 17-year marriage. Husband is 40 years old and is one of about 25 veterinary opthalmologists with clinical practices in the country. He works three days per week in Eugene and flies to San Mateo, California, for two days per week. Most of his business comes from referrals from general practitioners, although he occasionally obtains clients from other sources. Husband is one-fourth owner of a clinic building in Eugene which he shares with three other veterinarians. In the three years husband has practiced, his income has steadily increased. In 1978 he grossed $99,754 and netted $47,497 before taxes, but after deducting his costs of doing business. His 1979 estimates, based on ten months' receipts, are $130,956 gross and $62,335 net, before taxes.

Wife is 38 and working part-time as a secretary to a sole medical practitioner, netting, after taxes, approximately $300 per month. She has a teaching certificate which has lapsed, but which could be revalidated by taking nine hours of classes. During the marriage, wife taught full-time for four years and substituted for three years. She testified that she enjoyed teaching and felt she was good at it. She has some specialized training in remedial reading. She stated she had allowed her certification to lapse and has not renewed it (or otherwise sought full-time employment) since the parties separated in 1978 because she felt she should be available in the mornings and evenings to

care for the parties' two children, Amy Jo, 14, and Baron, 8. Both husband and wife are in good health.

The trial court awarded the parties joint legal custody of their two children and gave wife physical custody and the family home. After assigning a $27,000 value to husband's practice,[1] he made an approximately equal property division. He ordered permanent spousal support as follows: $500 per month for five years, $300 per month for ten years, and $200 per month thereafter until wife dies or reaches 62. He also provided for child support of $300 per month per child to continue until the children become emancipated, die, reach majority or, if enrolled in school, until they reach 21. The amount of such support is to increase annually by $25 per child per month until it reaches $400 per month, whereafter it will remain constant.

## I. *Spousal Support*

■ Where the parties have disparate income earning capacities, spousal support is appropriate to enable the disadvantaged spouse to live in a manner not overly disproportionate to that which she enjoyed during the marriage. *Grove and Grove,* 280 Or 341, 571 P2d 477, 280 Or 769, 572 P2d 1320 (1977). Permanent spousal support is appropriate where the marriage is of long duration and the spouse's age, education, health or other factors make it unlikely that the recipient spouse will ever be able to earn an adequate income. ORS 107.105(1)(c); *Hinsdale and Hinsdale,* 20 Or App 638, 532 P2d 1137, *rev den* (1975). Where it appears that, through training and education, the recipient spouse can eventually augment her earning capacity to the point where she can sustain a lifestyle comparable to that enjoyed during the marriage, spousal support should be ordered to enable her to gain that training or education.

■ We believe permanent support is appropriate in this case. The trial court's spousal support award takes into

---

[1] The $27,000 net value includes $39,500 in "goodwill" which offsets the otherwise negative value of the practice. This negative value is the product of husband's one-fourth liability for the mortgage on his professional building, which exceeds the tangible assets of the business by $12,500.

account the expectation that wife will be able to earn substantially more than she did at the time of trial, but assumes, we think reasonably, that even when she is able to work full-time as a teacher, her income is going to be unreasonably disproportionate to that which she would have enjoyed but for the dissolution. Accordingly, we conclude that permanent spousal support is justified in this case under the tests set forth above.

## II. *Goodwill*

The trial court valued husband's practice as a going concern and appears to have attributed approximately $39,500 to goodwill value. Both sides here offered expert testimony on this issue, although none of the experts had any experience with the sale or other transfer of the specific type of practice involved here. Wife's expert testified that, based on an approach which combines the fair market value of the tangible assets with a figure representing the capitalized net profits, the practice was worth approximately $160,000. Net profits were determined by subtracting the market value of husband's services (estimated at $40,000 per year) from the net receipts before income taxes but after deducting expenses ($62,335). Husband's experts disputed that a sole medical specialist practice has much goodwill value (a maximum of $5,000), based on their experience with valuation and transfer of interests in professional partnerships. The explanation for this low figure is that husband (since he has no one earning money for him in his absence) is the chief asset of the business and his gross receipts approximate the reasonable value of his services. There remains, therefore, very little in the way of "profits" after the value of husband's services have been deducted from gross receipts.

We conclude that we need not consider whether the trial court erred in assigning a value to the goodwill of husband's practice. We reach this conclusion because we are of the opinion that the property division was proper as a matter of an equitable division of the marital assets.

## III. *Child Support*

Citing the increase in recent years in the number of show cause hearings to modify spousal and child support

because of erosion of the real value of such payments through inflation, the trial court's child support award included a provision for annually escalating the amount of child support by $25 per month per child until it increases from $300 to $400. In *DeBoney v. DeBoney,* 36 Or App 783, 585 P2d 742 (1978), *rev den* 285 Or 1 (1979), we confronted a similar provision. We did not rule on the propriety of anticipating inflation by incremental increases in support levels; we held only that such an increase was not justified in that case because it raised the amount of support beyond an appropriate level. 36 Or App at 788.

■ A support award in a dissolution decree may be modified only upon a showing of changed circumstances which are substantial and which were not anticipated at the time the decree was entered. *Hellweg v. Hellweg,* 30 Or App 995, 997, 568 P2d 710 (1977). The question is whether it is proper to anticipate and provide for inflation in making support awards. Husband contends such an "inflation clause" was improper in this case because there was no evidence of inflation or its anticipated level in the future. He further contends that inflation is only one factor to be considered in deciding whether changed circumstances support a modification and that such circumstances cannot be known until they occur. For the reasons which follow, we conclude that it was not proper for the trial court to include a provision to anticipate possible economic conditions in the future.

■ In fixing the level of child support in a given case, the trial court is bound by statute (ORS 107.105(1)(b) to do what is "just and proper" under the circumstances.

In *Delf and Delf,* 19 Or App 439, 441-42, 528 P2d 96 (1974), we noted that, while the increased cost of raising children (both in terms of needs and in terms of cost of living) could in the proper case justify a modification in the level of support, it is not justified

" * * * each time a party receives a cost-of-living increase in income or the consumer index raises a point or the child ages by a year or month. Such changes are within a range which are reasonably foreseeable at the time of the entry of the decree and must be considered to be contemplated by it. * * *"

■    While inflation is a factor properly considered in fixing the basic amount of child support, we conclude it was improper for the trial court to have provided by formula for automatic increases beyond the basic level.

In *Picker v. Vollenhover,* 206 Or 45, 290 P2d 789 (1955), the Supreme Court refused to adopt that portion of an Illinois divorce decree providing for an automatic increase in child support tied to husband's earnings. The court pointed out that each case is unique and the amount of support depends upon many variables, and that these variables may change with time, and from time to time. The court stated:

"* * * In particular, it should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of the earnings of the defendant. The original decree retains its vitality unless and until the court on proper showing finds that on all of the evidence presented a change in support is required. A provision such as [the one here] is not only based on speculation as to future events,-it is also based on the assumption that a change in one only of the many circumstances which may be relevant to the issue shall be conclusive. * * *" 206 Or at 72.

We conclude that the trial court decree should be modified by requiring husband to pay $350 per month per child, an amount which is an increase of $50 per month per child over the basic support awarded by the trial court. Clearly, the husband is able to afford it here, and it appears that it is presently justified and needed. In all other respects, we affirm.

Affirmed as modified. No costs to either party.