Argued and submitted April 7, reversed and remanded with instructions in part;
modified in part; otherwise affirmed June 12, 2003

In the Matter of the Marriage of

Nicolay N. SHLITTER,
*Appellant,*

*and*

Lorry Lee SHLITTER,
*Respondent,*

*and*

James B. LOGAN
and Lawrence Burry,
aka Larry Burry,
*Respondents below.*

99-2684-D-2(1); A113854

71 P3d 154

Douglas J. Richmond argued the cause for appellant. With him on the brief was Kellington, Krack, Richmond, Blackhurst & Sutton, LLP.

Barbara M. Palmer argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

# BREWER, J.

Husband appeals from a judgment dissolving the parties' 17-year marriage. He contends that the trial court erred in failing to divide the parties' marital debts equitably and in providing for an automatic future increase in his child support obligation.[1] On *de novo* review, ORS 19.415(3), we modify the division of debts and the child support obligation.

The parties were married in 1982. Husband filed a petition for dissolution in October 1999. At that time, wife was 44 and husband was 43. They had two children, ages 8 and 11. Custody of the children was awarded to wife. While they were married, husband was self-employed as a construction contractor. Although his income varied, the trial court found that the income averaged $5,000 per month. Wife managed a retail store that the parties also owned, but it was not profitable. After a preliminary hearing, the trial court authorized husband to sell the store.[2] Wife occasionally worked for the new owner as a consultant, but she no longer managed the business.

The parties moved to Oregon from Hawaii in 1993. At the time, they owed husband's mother (Shlitter) $350,000 for loans that she had made to them for real estate investments in Hawaii. The parties liquidated those investments when they moved to Oregon. They repaid part of the loans in cash but used $185,000 to purchase a residence for Shlitter in Grants Pass. The parties took title to that property in their own names, not Shlitter's. At trial, Shlitter testified that she agreed that the Grants Pass residence could be conveyed to

---

[1] Husband also argues that the court erred in setting the amount and duration of spousal support awarded to wife and in awarding a boat (a marital asset) to husband without considering the debt against it. We reject those arguments without discussion.

[2] Husband filed a motion for exclusive use, possession, and control of the business so that he could sell it without having to wait for the court to divide the rest of the parties' property. The court granted that motion, and husband sold the store before trial.

the parties "because they [are] young, they know what to do, how to, how to—I let them have it and maybe sometime I come here and retire, and that's it." The parties rented the residence to a third party. Initially, the monthly rent payments were paid to Shlitter, but when the parties' retail business began to suffer financial problems, Shlitter allowed them to keep the rent. After the parties separated, they conveyed the Grants Pass residence to Shlitter.

During their marriage, the parties received three additional advances from their parents that are relevant to the division of their finances. Wife's parents loaned them $25,000.[3] In addition, Shlitter loaned them $40,000 in 1994 so they could purchase an undeveloped parcel known as the Whitmore property. In 1995, Shlitter advanced an additional $105,000 to the parties with the understanding that they would use the money to build two houses on the Whitmore property, one for themselves and the other for her. The houses were never built.

In her trial memorandum, wife acknowledged that each of the three above-mentioned advances constituted debts of the marriage. However, in closing argument at trial, wife contended that the evidence was unclear as to whether Shlitter expected repayment of the $105,000 advance. Wife proposed that, if payment of the $105,000 and $25,000 debts were sought thereafter, each of the parties should be solely responsible for the debt owed to his and her own parents.

The trial court adopted wife's proposal, stating, "The issue of the parties' indebtedness to their families is always difficult to sort out. I order that each party be responsible for the debts to their respective families." However, the court awarded the Whitmore property to wife, subject to the $40,000 debt owed to Shlitter for the funds she advanced to acquire that property. The court divided the parties' assets and liabilities as follows:

---

[3] The record does not indicate the date or the purpose of the loan.

| Assets | Wife | Husband |
|---|---|---|
| Marital home | $176,000 | |
| Whitmore parcel | 90,000 | |
| Personal property | 36,410 | |
| Rental house | | $104,000 |
| Rental duplex | | 170,000 |
| Personal property | | 27,000 |
| Husband's business | | 10,000 |
| Gross Assets | $302,410 | $311,000 |

| Liabilities | | |
|---|---|---|
| Encumbrance on marital home | $100,000 | |
| Encumbrance on Whitmore parcel[4] | 54,000 | |
| Encumbrance on rental duplex | | $135,000 |
| Consumer debts | | 35,400 |
| Gross Liabilities | $154,000 | $170,400 |
| | | |
| Net Award | $148,410 | $140,600 |

To offset the difference between the net awards, the court ordered wife to pay husband $7,410.[5] However, the net awards did not take into account the amounts of family indebtedness that were assigned to each of the parties. If those debts were included in the calculus, husband's net financial award would be $80,000 less than the award to wife ($105,000 minus $25,000).

The court ordered husband to pay wife maintenance spousal support for eight years in the amount of $1,200 per month for the first five years and $1,000 per month for the remaining three years. It also ordered him to pay $670.45 per month for child support for the first five years, after which the amount is scheduled to increase to $710.35 per month until each child reaches the age of majority or is otherwise

---

[4] The encumbrance on the Whitmore parcel includes the $40,000 debt owed Shlitter for the acquisition of that property.

[5] Wife does not assert on appeal that the trial court erred, in calculating husband's equalizing judgment, by failing to divide the difference between the parties' net awards in half.

emancipated. The court calculated the level of child support for the first five years based on the parties' potential incomes at the time of dissolution, adjusting each party's income to account for the $1,200 per month spousal support award. The court then recalculated the child support award, again based on the parties' potential incomes at the time of dissolution, but it adjusted husband's income upward and wife's income downward by $200 each to reflect the step-down in spousal support after five years.

■ On appeal, husband first asserts that the trial court erred in failing to treat the $105,000 and $25,000 advances from the parties' parents as marital debts. He argues that the court's failure to treat the $105,000 advance from his mother as a marital debt resulted in an inequitable overall division of the parties' property and debts, requiring him to pay $80,000 more than wife. He points out that both parties designated the advances as marital debts in their trial memoranda and that wife did not contend otherwise until closing argument. In response, wife acknowledges that the parties owed Shlitter $40,000 for the Whitmore property, but she contends that Shlitter gave the Grants Pass residence to them without expecting repayment. Wife relies on Shlitter's testimony that "I let them have it" as evidence that the house was a gift. Wife also argues that the evidence was unclear as to "whether [Shlitter] ever expected to be repaid the $105,000, whether the transfer of title to her of the Grants Pass house, which was valued at $240,000, satisfied any remaining obligation the parties might have toward [Shlitter], or whether the funds were yet another gift from [Shlitter] to [the parties]." Wife reasons that,

> "given the history of borrowing, repaying and gifting between [Shlitter] and the parties, the lack of any documen-tation evidencing a requirement that the parties were obli-gated to repay the $105,000 to her, and [Shlitter's] inability to recall any terms of such obligation, [it is unclear] whether there still is a debt owing her."

In reply, husband asserts that we should not con-sider wife's arguments that the Grants Pass residence was a gift and that the parties conveyed that property to Shlitter in satisfaction of the $105,000 obligation, because wife makes those arguments for the first time on appeal. He also argues

that Shlitter did not intend for either the Grants Pass residence or the $105,000 advance to be a gift. He asserts that his mother's testimony that she "let them have it" referred to giving the parties *rent* from the Grants Pass residence and not to the property itself.

█ █ We begin our review of the trial court's division of property with the self-admonition that we will not modify it unless we conclude that a different division is significantly preferable. *Kunze and Kunze*, 181 Or App 606, 615, 47 P3d 489, *rev allowed*, 335 Or 114 (2002). ORS 107.105 provides, in part:

> "(1) Whenever the court grants a decree of marital * * * dissolution * * * it may further decree as follows:
>
> "* * * * *
>
> "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

As part of its authority to divide property, a court may divide the debts that the parties incurred during their marriage. *McInnis and McInnis*, 62 Or App 524, 527, 661 P2d 942 (1983). As with assets acquired during the marriage, the debts must be divided equitably. *Id.*

We agree with husband that the cash advances from both parties' parents were marital debts. As a preliminary matter, the record supports husband's contention that wife failed to argue at trial that the Grants Pass residence was a gift to the parties from Shlitter. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) ( an appellate court should affirm a trial court's ruling on alternative ground only where "the record [is] materially * * * the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below"). Moreover, the evidence does not support wife's argument. Although the Grants Pass residence was

acquired in the parties' names, the evidence showed that they purchased that property with the proceeds of the sale of their Hawaii property when they still owed money to Shlitter in connection with the acquisition of the Hawaii property. Furthermore, Shlitter testified without contradiction that she initially intended to move into the Grants Pass residence when she retired. When the parties later agreed to build a house for Shlitter on the Whitmore parcel, she no longer needed the Grants Pass residence for that purpose. Eventually, the parties conveyed the Grants Pass property to Shlitter. However, the timing of that conveyance does not itself demonstrate that, in accepting it, Shlitter intended to satisfy the $105,000 debt associated with the Whitmore property. *See Adams and Adams*, 177 Or App 459, 462, 34 P3d 731 (2001) ("[A]lthough the payment of the debt [to the wife's parents] had been suspended for a number of years, the loan had not been transformed into a gift."). Nor did wife offer any other evidence that Shlitter agreed to accept the conveyance of the Grants Pass residence in satisfaction of that debt.

Indeed, the evidence shows that the $105,000 advance was not initially made as a gift and that it had not since been forgiven. Shlitter testified that the parties "still owed" that debt and that she expected to be repaid now that, in light of the dissolution of the parties' marriage, they would not be building a house for her on the Whitmore parcel. Wife offered no contradictory evidence. Moreover, as discussed, wife conceded in her trial memorandum that the $105,000 advance was a marital debt. The evidence showed that the parties received $105,000 from Shlitter for the purpose of building two houses, but they did not do so. The evidence did not show how the parties spent the money, but they no longer had it at the time of dissolution. Wife does not assert that husband used the money in a way that would make it equitable to require that he alone repay it. The same is true of the $25,000 loan that the parties received from wife's parents. On *de novo* review, we conclude that the $105,000 and $25,000 debts to the parties' parents should be divided evenly between the parties. *See Ashlock and Ashlock*, 186 Or App

212, 218-19, 62 P3d 874 (2003) (loan from the husband's parents was used for living expenses and thus the trial court correctly divided the debt between the parties).

It is true that, where the credibility of witnesses is at issue, we generally have declined to second-guess a trial court's characterization—either as loans or gifts—of advances made to spouses by other family members. For example, in *Adams*, 177 Or App at 461, the husband conceded that the wife's parents had made a loan to the parties, but he testified that he believed that it had been forgiven; the wife and her parents testified that the debt was still owed; the trial court found that the debt had not been transformed into a gift. We deferred to the court's credibility determination. *See also Ashlock*, 186 Or App at 218-19 (affirming the trial court's characterization of the transaction as a loan). In this case, though, credibility was not at issue. The evidence showed that both parties' parents had been generous with their financial support and that they had been lenient in demanding repayment. It is conceivable that neither party will ever repay their respective parents. However, as discussed, there was no evidence that the $105,000 advance was made as a gift or that it was ever satisfied. The same is true of the loan from wife's parents. In the end, the trial court speculated that the parties' parents might not enforce those debts. Notwithstanding the possible accuracy of that conjecture, the trial court's apportionment of the family debts leaves husband at a substantial and inequitable financial disadvantage in comparison to wife.

We decline, however, to modify the trial court's judgment by simply increasing the offsetting judgment in husband's favor. Instead, we exercise our authority on *de novo* review to fashion an appropriate remedy. *See Day v. Griffith*, 283 Or 393, 403, 584 P2d 261 (1978). We conclude that each party should remain responsible for the debt owed to his and her respective parents, but each party shall reimburse the other for 50 percent of any payments that the other is required to make on his or her debt. *See Ashlock*, 186 Or App at 219 n 2 (affirming portion of dissolution judgment requiring the wife to reimburse the husband for 50 percent of payments on marital debts owed to the husband's parents, and

noting, "If husband's parents never require him to repay them, under the terms of the judgment wife will owe nothing for this liability").[6]

■ We turn to husband's argument that the trial court erred in providing for an automatic increase in his child support obligation five years after the date of dissolution. Husband contends that the trial court engaged in speculation when it forecast the parties' future incomes. Wife responds that the reduction at that time in her spousal support award is a foreseeable change in circumstance that justifies an automatic increase in husband's child support obligation.

The parties have not brought to our attention any statute that governs our decision on this issue, and we are aware of none. However, in determining whether an automatic increase in child support is justified, we are guided by ORS 25.275. That statute establishes criteria that must be taken into consideration in determining child support awards.[7] In addition to assessing the parents' actual and potential financial resources, courts must consider the needs of each parent, the ability of each parent to borrow, the needs of the child, the amount of assistance the child would receive from Social Security, preexisting support orders, other benefits received by the child, and other reasonable criteria established by the Division of Child Support. ORS 25.275(1)(c)-(i). Thus, the support determination is based on a complex set of variables.

In *Maurer and Maurer*, 49 Or App 355, 619 P2d 964 (1980), we rejected automatic increases in child support that the trial court had ordered in anticipation of inflation. We concluded that the court could consider inflation in fixing the original support award but that providing for automatic increases was inappropriate because inflation was but one

---

[6] We are mindful of the possibility that such a reimbursement requirement is vulnerable to manipulation and, indeed, to artifice. However, we are satisfied that that risk can be mitigated by judicial vigilance if the legitimacy of a claim for reimbursement is contested by the would-be reimbursing party.

[7] ORS 25.275 addresses factors relevant to a determination of the amount of a child support award, but it does not address factors that are relevant to the determination of whether a change of circumstances has occurred that is sufficient for the court to reconsider a child support award. That threshold issue is governed, in part, by ORS 107.135(2) and (3).

factor among many that could change over time. *Id.* at 361; *see also DeBonny and DeBonny*, 36 Or App 783, 788, 585 P2d 742 (1978), *rev den*, 285 Or 1 (1979) ("[W]e see no justification at this time in providing an automatic increase over what we consider just and proper support at this time."). *Maurer* and *DeBonny* were informed by the Supreme Court's decision in *Picker v. Vollenhover*, 206 Or 45, 290 P2d 789 (1955). In that case, the court refused to adopt a portion of an Illinois divorce decree that provided for an automatic increase in child support tied to the husband's earnings. *Id.* at 72. The court noted that the amount of support ordered depends on many variables:

> "In particular, [the trial court] should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of the earnings of the defendant. The original decree retains its vitality unless and until the court on proper showing finds that on all of the evidence presented a change in support is required. A provision such as [the one here] is not only based on speculation as to future events,— it is also based on the assumption that a change in one only of the many circumstances which may be relevant to the issue shall be conclusive."

*Id.*

In this case, the trial court's decision was based on predictions concerning the parties' incomes. Unless an unforeseen change of circumstances occurs, wife's income from spousal support will decrease by $200 after five years. However, it is impossible at present to predict what her total income will be at that time. The trial court ordered a future increase in child support based on nothing more than an anticipated decrease in one source of wife's income and the commensurate net increase in husband's income. It failed to consider the circumstances as a whole, including those specified in ORS 25.275. The proper time to reconsider husband's child support obligation on this ground will be when a change in his spousal support obligation occurs. At that time, the court can consider the circumstances of both parties and determine whether and what modification is appropriate. In the meantime, we delete the portion of the judgment providing for an automatic increase in child support after five years.

Property division reversed and remanded with instructions to divide property in accordance with this opinion; child support modified to eliminate automatic increase and affirmed as modified; otherwise affirmed.