Submitted on record and briefs November 4, 2005, affirmed February 1, 2006

In the Matter of the Marriage of

Dona M. THOMPSON,
*Respondent,*

*and*

Terrence E. THOMPSON,
*Appellant.*

04P2038; A127151

129 P3d 189

Terrence Eugene Thompson filed the briefs *pro se.*

Dona Mae Thompson filed the brief *pro se.*

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

In this dissolution of marriage proceeding under ORS 107.105, husband appeals, arguing that the trial court erred when it awarded the parties' real property to wife. Husband contends that the property should be sold and that he should receive 50 percent of the proceeds of the sale. We affirm.

The parties were married in 1987 and have three children, who were ages 14, 7, and 4 at the time of trial. The parties separated in September 2003, and the trial court entered the judgment of dissolution of marriage in December 2004. The issue on appeal concerns the parties' real property, which comprises ten acres and a 1,100 square foot manufactured home. There are also two barns on the acreage. The property was purchased during the marriage. Without explanation, the trial court awarded the real property to wife subject to its mortgage. The mortgage is payable in monthly installments of $1,041, which the court ordered wife to pay. At the time of trial, wife valued the property at $176,000, a valuation that was derived from the county property tax statement. In addition, wife testified without objection that she had been told that the property was worth $192,000. Husband opined that it was worth $239,000. The trial court made no findings as to the value of the property as part of its decision.

Wife testified at trial why she believed that she should be the sole recipient of the equity in the real property. She explained:

> "And, you know, I need a home. I mean, I need a place to raise my children and a place to shelter them.
>
> "* * * * *
>
> "All three of the boys are very active and doing chores, and taking care of the animals and the farm. Our 14-year-old has livestock that he uses in 4-H that he keeps. A portion of my income is actually generated from farming. I grow—we have a greenhouse, and I grow vegetable starts. I raise bees for the honey; I have cows that I raise for beef; I

have about 50 chickens that I sell eggs. So, you know, probably—I only work part time. So I would say probably a quarter of my income is generated from actual farming.

"* * * * *

"I believe that our home is the only actual financial security that I can provide for my kids."

A common thread in wife's testimony was her contention that husband was financially irresponsible and that the equity in the property would eventually be lost due to federal tax liens and other obligations that husband had incurred if the property was not awarded to her. Wife also testified that she works between 20 and 25 hours per week as an assistant to a veterinarian and makes $10.50 per hour. In addition to her request that she be awarded the equity in the real property, wife also asked the court to award spousal support in the amount of $258 per month for five years. However, the trial court declined to award wife any spousal support.

Husband testified that he makes approximately $43,000 annually as a real estate agent. He informed the court that his potential tax liabilities would be remedied in the near future once tax returns were filed. As the trial court considered how to divide the equity in the real property, the following colloquy occurred between the court and husband:

"[HUSBAND]:    I have an idea. I don't want my family to have to leave the farm. That's what I do understand.

"THE COURT:    That's good. And you two agree on that?

"[HUSBAND]:    Yes, sir. But I do—I do understand that it's not right for me or fair for me to just have to get up and walk away and leave what I built, let alone leaving my children. Even though I do see my children quite a bit; but I was still taken from them, and that wasn't fair.

"So if we can come to a middle ground on the value of what is owed to me, we can set up a time frame that can be paid to me.

"THE COURT:    Well, first of all, that land is not further dividable?

"[HUSBAND]:    Correct.

"THE COURT:  So that solves that problem.

"Both of you don't want to sell it, so that gets rid of that problem. So the land, it remains—she stays on it, and the boys stay on it; and if she is going to take the house payment, so whatever the equity is, how is that going—how are you going to get your equity out of there? Wait five years and then she has to refinance?"

The court then engaged in a colloquy with wife, observing that she made $10.50 per hour working part-time. Wife explained to the court, "I really don't feel obligated to pay [husband] anything for equity. I mean, when I agreed to stay home and have children and him provide for myself and the children, I didn't anticipate coming to this point ever." Wife continued:

"And, you know, again part—I work part time out of the home because the other part of my time I spend taking care of the farm. Mr. Thompson has not really—other than maybe constructing structures, he does not do any of the farming or taking care of the animals and has not since we've lived there. So when he says he has built the farm, I'm a little cautious as to what I understand there.

"You know, he has not provided consistently an income. He said that he's paid the mortgage payments. Since he hasn't lived there in September, he's paid five of the nine mortgage payments, not all of them.

"I think that he should provide a home for us. I don't believe that I should have to pay him any equity out of it. On my income it would be very unreasonable for me to have to make a payment to him, and I still have little kids at home and it would be unreasonable for me to have to go to work any more than that."

Husband countered:

"Well, I'm willing to set a time frame, but I'm also willing—the money that I use for child support and the spousal support, use to make the mortgage payment and then I have the interest written off on that yearly. And then we can set a time frame on the amount and the amount of money that's owed, and a balloon payment in a certain amount of time."

After hearing from the parties, the trial court made the following determinations: In addition to awarding the real property to wife subject to its mortgage, it also required wife to make the car payments. The trial court required husband to pay the remainder of the marital debts. Those debts included a federal tax obligation of $8,000 to $13,000 and a credit line issued by a bank to husband in the amount of $15,000.

In his brief on appeal, husband summarizes his position:

"Wife has failed to rebut husband's contention that the court failed to establish that the court's distribution of the real property and debts of the parties was 'just and proper' under the statutory criteria established by ORS 107.105(1)(f). Wife is leaving the marriage with the only substantial asset of the parties, the real property with its substantial equity, while husband leaves the marriage with approximately $26,000 of the parties' debt. Husband maintains that the court did not find circumstances which were 'just and proper' to support such an award."

Approximately five months before this case was decided by the trial court, the Oregon Supreme Court decided *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). In *Kunze*, the court described the analytical framework for determining issues that arise under the statutory presumption of ORS 107.105(1)(f):

"That statutory presumption embodies a legislative intent to recognize that, absent evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of, the marital estate, regardless of the nature of those efforts or how the property is held. To effectuate that intent, the presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets. When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties."

*Kunze*, 337 Or at 134 (citations omitted).

■ Here, the statutory presumption was not rebutted by wife. The question then is whether there are other circumstances in this case that weigh against an equal division of the equity in the parties' real property. At trial, husband did not want the trial court to order the property sold, and apparently acknowledged wife's need for transitional spousal support. Rather, he requested that he be paid his equity from the property after a certain amount of time had expired. Husband's request to us that the property be ordered sold and the net sale proceeds be divided equally is inconsistent with his position at trial. Moreover, the trial court structured the payment of the marital debts in order to provide wife and the parties' children with a place to live. If we were to adopt husband's newly made request on appeal, we would disrupt that allocation. For those reasons, we decline to accept husband's request that the property be sold.

The other alternative would be to adopt husband's suggestion at trial that the equity be determined as of the time of trial and that wife be required to make a balloon payment after the lapse of a certain amount of time in order to compensate husband for his equity. There are several impediments to that proposed resolution. The trial court made no determination as to the value of the property so that the equity in it could be determined. On *de novo* review, there is no persuasive evidence from either party that would permit us to arrive at a value other than the county's valuation for property tax purposes of $176,000. Husband's testimony that the property is worth $239,000 is suspect because of the obvious interest that he has in increasing the value of the property, and because his testimony lacks supporting information. Wife's opinion of $196,000 is based on hearsay and on a comparison with other properties, but the record does not demonstrate that the properties used for comparison are truly comparable. We are left therefore with the county's assessment of value for tax purposes as the real market value of the property.

If the mortgage is deducted from a valuation of $176,000 and that amount is further reduced by the $15,000 owed on husband's bank credit line and the $8,000 to $13,000 he owes in federal taxes, the remaining equity in the property approximates $36,000 to $41,000. Based on those amounts,

husband's share of the remaining equity would be between $18,000 and $20,500. However, under wife's proposed spousal support award, husband would owe wife $15,510 over a five-year period. Moreover, the parties' other marital debts would constitute a potential deduction from the parties' equity. Thus, it is reasonably inferable from the record that most of, if not all of, husband's share of the equity in the property would have been offset by marital debts and husband's spousal support obligation, taking into account the parties' potential tax obligations, if that obligation had been imposed.

■ This court will not modify a property division unless it is convinced that it can make a disposition significantly preferable to that made by the trial court. *Triperinas and Triperinas*, 185 Or App 283, 296, 59 P3d 586 (2002). In addition, we are mindful of the need to provide a family home for the parties' children. Indeed, our case law has previously recognized that an award of property may be made in lieu of an award of spousal support, and to provide a family home. *See, e.g., Moore and Moore*, 112 Or App 503, 505-06, 829 P2d 704 (1992) (it is permissible to award one spouse more of the marital assets in lieu of spousal support when it is the best way to provide support); *see also Richardson and Richardson*, 307 Or 370, 380, 769 P2d 179 (1989) (social objectives may require an unequal division of marital property). In fact, the trial court's award appears to provide the parties' children with the greatest amount of security and the least amount of disruption in their lives in light of the parties' circumstances. We take into consideration also husband's poor history of meeting his financial responsibilities, particularly his tax obligations, despite the fact that he is capable of making $40,000 annually. It is conceivable that awarding the marital home to wife provides her with more security than if transitional spousal support had been awarded. For all of those reasons, we conclude that we cannot reach a property division that is significantly preferable to the trial court's award of the parties' real property to wife.

Affirmed.