693

Argued and submitted June 27, property division reversed and remanded
with instructions to divide property in accordance with this opinion;
otherwise affirmed December 13, 2006

In the Matter of the Marriage of

Emeritha UWIMANA,
*Respondent - Cross-Appellant,*
*and*

Felicien RWANGANO,
*Appellant - Cross-Respondent,*
*and*

Yves NSHIMIYE
and Angeline Mutima,
*Third-Party Adult Children.*
0330370; A127353
149 P3d 257

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Pamela S. Hediger argued the cause for respondent - cross-appellant. With her on the briefs was Evashevski, Elliott, Cihak & Hediger, PC.

Before Landau, Presiding Judge, and Schuman, Judge, and Rasmussen, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

In this dissolution of marriage case, husband challenges the trial court's property distribution. In particular, he argues that the trial court erred in making him responsible for two-thirds of the preseparation credit card debt, for giving wife approximately three-quarters of the equity in the marital residence, and in treating what he argues was a loan to his sister-in-law as a gift. Wife cross-appeals, contending that the trial court erred in giving husband half of certain refunded escrow funds. On husband's appeal, we affirm in part and reverse in part. On wife's cross-appeal, we affirm without discussion.

On *de novo* review, ORS 19.415, we find the following facts. Husband and wife were married in Rwanda in 1981. They have four children ranging in age at the time of dissolution from 17 to 22. Husband earns $3,650 per month and wife earns $4,200 per month. For most of the marriage, the parties put all of their income into a joint account and paid all family expenses from that account. In 1999, however, wife opened her own separate account into which she deposited her paychecks. At around the same time, husband obtained several credit cards in his own name.

During their marriage, the parties gave money to Rwandan refugees, both family members and others. These donations were gifts; neither party expected repayment. They also provided wife's sister, a resident of the United States, with $7,500 to help pay her tuition and expenses while attending nursing school. Husband testified that the money was a loan that he expected his sister-in-law to repay; wife characterized it as a gift.

In 2001, husband and wife jointly purchased a home for the family to live in. Husband paid half of the $15,000 down payment from the parties' joint account, and wife paid the other half from her separate account. Thereafter, until the parties separated, they split the mortgage payments evenly.

A few years later, when the parties applied to refinance the home, wife discovered that husband had accumulated over $30,000 in credit card debt. Partly for that reason,

the parties separated. By the time of dissolution, the debt had grown to $37,000. The parties agree that the post-separation debt is husband's responsibility, but they disagree about the preseparation debt. Wife argues that it, too, is husband's responsibility, while husband insists that he made the expenditures underlying the debt for such family purposes as groceries, auto repairs, gasoline, utilities, and medical expenses.

As noted above, the trial court found that husband was responsible for two-thirds of the preseparation credit card debt, that wife was entitled to approximately three-quarters of the equity in the home, and that the money sent to wife's sister was a gift. Husband assigns error to all three of those decisions.

We begin with the credit card debt. Like marital assets, marital debt is presumptively evenly divided, *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003), with the ultimate division guided by consideration of what is just and proper, ORS 107.105(1)(f). Equitable division is not necessarily equal division. *See Richardson and Richardson*, 307 Or 370, 379-82, 769 P2d 179 (1989) (stating principle with respect to marital assets). Each case depends on its particular facts. *Johnson v. Johnson*, 245 Or 10, 15, 419 P2d 28 (1966). In the present case, wife initially testified that she, and not husband, was responsible for all family-related expenses. On cross-examination, however, when confronted with husband's check register and credit card receipts showing expenditures at grocery stores, auto repair shops, gas stations, mortgage companies, and other providers of goods and services obviously related to family needs, she conceded that husband paid for at least some of the family expenses, and that payment came either from credit cards or from checks drawn on an account into which husband had deposited credit card cash advances.

The trial court decided to "give [husband] a third credit for family benefit on his credit card expenses, because with what [evidence] I had that's the best I can do." Although our review is *de novo*, we generally defer to a trial court's credibility judgments insofar as they are based on demeanor;

our deference is less when credibility is based on such objective criteria as internal consistency and other objective evidence. *Moore and Moore*, 146 Or App 661, 671, 934 P2d 572 (1997), *aff'd*, 328 Or 513, 982 P2d 1131 (1999). Here, the *only* evidence supporting wife's version of the facts is her initial assertion. Her subsequent partial retraction undercuts the credibility of that assertion. Husband, on the other hand, presented hard evidence in support of his version. We therefore conclude that the court erred in finding that husband's credit card debt was disproportionately due to non-family-related expenses. Further, because wife earns more than husband, we are not convinced that an uneven distribution of responsibility is just and proper in the circumstances. On remand, the trial court should evenly distribute responsibility for the preseparation debt on husband's credit cards.

We also agree with husband that the trial court erred in giving wife approximately three-quarters of the equity in the family home. The trial court based that decision on the fact that wife used money from her own separate account for the down payment and husband used money from a joint account. Although those facts are uncontested, the money from wife's account is a marital asset, because it was acquired during the marriage. ORS 107.105(1)(f); *see also Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004). We therefore presume that both spouses contributed equally to the acquisition. ORS 107.105(1)(f); *Kunze*, 337 Or at 134. Wife can rebut that presumption by showing by a preponderance of the evidence that husband's efforts during the marriage did not contribute equally to the acquisition through either economic or noneconomic efforts. *Id.* Further, even if wife can overcome the presumption of equal contribution, we must still consider what is just and proper in the circumstances. *Id.* at 135.

The dispositive fact in the present case is that even if wife were able to demonstrate that she acquired the funds with no direct or indirect help from husband, the funds were nevertheless commingled into an asset of the marriage—the family home. Once commingled into the family home, her original contribution was not traceable as part of the home's current value. *Id.* at 137-39 (untraceable commingling of separately held asset into family finances may nullify spouse's

attempt to overcome presumption of equal contribution). Additionally, even if we could conclude that wife overcame the presumption despite the untraceable commingling, we would nonetheless conclude that, because her contribution was used to purchase a home in which the family would live and raise their children and nothing in the record indicates that she intended to keep her contribution separate, it is just and proper to evenly divide it. *Seefeld and Seefeld*, 294 Or 345, 657 P2d 201 (1982); *see also Kunze*, 337 Or at 142; *Lind and Lind*, 207 Or App 56, 67-68, 139 P3d 1032 (2006). We therefore conclude that the trial court erred in crediting wife with more than half of the equity in the family home.

 Finally, husband assigns error to the trial court's decision to classify as a nonasset the $7,500 that he and wife gave wife's sister, and therefore to exclude it from the property to be divided. Husband argues that the money was a loan and that it will be repaid. Wife asserts that the money was a gift, similar to the assistance that husband and wife provided to other Rwandan refugees. The trial court accepted wife's explanation of the money. On *de novo* review, we generally decline to "second-guess a trial court's characterization—either as loans or gifts—of advances made to spouses by other family members." *Shlitter*, 188 Or App at 285. We see no reason to avoid applying the same reasoning to advances made *from* spouses *to* other family members. Additionally, the record plainly supports the trial court's determination. Husband conceded at trial that financial support of Rwandan refugees—family and nonfamily, abroad or in the United States—was part of the family's culture. There is no evidence to support husband's contention that the money was a loan. The trial court did not err in its characterization.

Property division reversed and remanded with instructions to divide property in accordance with this opinion; otherwise affirmed.