Argued and submitted November 8, 2007, reversed and remanded for entry of amended judgment awarding wife indefinite maintenance spousal support of $5,000 per month from date of original judgment, otherwise affirmed; affirmed on cross-appeal February 6, 2008

## In the Matter of the Marriage of

### Linda M. POTTS,
*Petitioner-Respondent,*
*Cross-Appellant,*

*and*

### John F. POTTS,
*Respondent-Appellant,*
*Cross-Respondent.*

## Washington County Circuit Court
## C020317DRA; A124966

176 P3d 1282

Nick A. Drakulich argued the cause for appellant - cross-respondent. With him on the briefs was Drakulich & Carlson, P.C.

Mark Johnson argued the cause for respondent - cross-appellant. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

In this dissolution action, husband appeals, challenging the trial court's award of $7,000 per month in indefinite maintenance spousal support to wife. Wife cross-appeals, assigning error to the trial court's failure to award her certain real property as part of the property division. We affirm without discussion on cross-appeal and, on appeal, we reduce the indefinite award of spousal support to $5,000 per month, and otherwise affirm.

Our findings on *de novo* review, ORS 19.415(3), are, except as noted, consistent with the findings of the trial court. At the time of dissolution, the parties had been married for 34 years. Husband was 57 years old, and wife was 54. The parties have two adult children. The parties are in relatively good health. During the marriage, wife was a homemaker and mother to the parties' children while husband built a chain of five successful fitness equipment stores that he operates as a sole proprietorship. The parties established a standard of living over the course of their marriage that afforded them the luxuries of frequent travel, multiple vehicles, a million-dollar home, and a financial comfort level that allowed them to live as they pleased within reason.

Wife is employed full time at an income of $2,731 per month. Wife reentered the workforce after 24 years as a homemaker and mother while continuing to provide regular care and support for the parties' disabled adult daughter.[1] Wife's employment provides a benefit package that includes medical and dental insurance at little or no cost to wife. In her uniform support affidavit, wife claimed total monthly expenses of $7,048. Husband asserted that wife had inflated her expenses for automobile use, insurance, and credit card debt and that her true monthly expenses were $4,900. Wife did not specifically contest the adjustment that husband advocated. Instead, she replied that her "stated expenses do

---

[1] The extent of the daughter's disability is not altogether clear from the record. According to wife's testimony, the daughter has attended college, worked for a bank, receives social security income, and lives independently, although she was unemployed at the time of trial. Husband does not challenge wife's claimed monthly expenses on behalf of the daughter in the amount of $406.

not assume a lifestyle approaching what the parties enjoyed during the marriage," that she is "now seeking a fraction of the amount of money that was available to her during the marriage," that "she will still be contributing to the support of her disabled daughter," and that even if her "needs are as minimal as husband claims, if wife were to purchase a home worth even one-half the value of the marital home, she would need to utilize a significant portion of the equalizing judgment she was awarded."

Husband's pretax net business income for 2003 was $22,906 per month, or $274,879 annually. Over the course of the marriage, the income from the business steadily increased. However, in recent years, there had been a significant decline as a result of general economic malaise. The short-term outlook for the business nevertheless was good, suggesting a moderate increase in profitability. Husband's 2003 business income provides the best basis for determining his future income.

The trial court awarded husband the primary assets of the marriage. Those assets included the family business, valued at $1,132,000; the building in which the business's flagship store was located, valued at $937,000 (taking into account the need for substantial repairs); and the marital residence and accompanying 33 acres of land, with a value, net of encumbrances, of $335,334. In addition, husband received other, less valuable assets and was required to pay the bulk of the marital debts. The value of the marital assets awarded to husband, net of indebtedness, was $2,489,938.

Wife received retirement accounts valued at $434,853, investment accounts valued at $44,709, and life insurance valued at $32,667. She also received some additional assets and was required to pay a modest amount of marital debts. Wife received an initial award, net of indebtedness, of $512,229 in marital assets. In order to equalize the property division, the trial court awarded wife a judgment for $988,875, resulting in a net award of $1,501,063 to each spouse. Husband testified that, if he had to pay a $1 million equalizing judgment, he could do so within 60 to 90 days. He planned to borrow as much as he could from a bank and supplement that amount with a private loan. The security for the

private loan would be husband's "word." Husband's expert witness testified that financing the payment of the equalizing judgment would cost husband approximately $71,148 per year.[2] The trial court ordered husband to pay the equalizing judgment within 120 days.

In addition, the trial court ordered husband to pay wife $7,000 per month in indefinite maintenance spousal support. The court explained:

"5.    Husband will have to finance an equalizing judgment in this case. The impact will be twofold: First, Husband will have to pay the monthly financing cost which will significantly impact his available income. Second, Wife will receive a substantial amount of liquid assets (judgment payoff) which will be available to her to generate income both for living expenses and for the purpose of developing additional retirement assets.

"6.    After consideration of the applicable statutory factors, each party's Uniform Support Affidavit, each party's earned incomes from employment, the 'cost and benefit' of the equalizing judgment and the lifestyle to which the parties have been accustomed, indefinite spousal support maintenance is appropriate."

The trial court's spousal support award is the sole focus of husband's challenge on appeal. He asserts that the court

"erred in awarding Wife indefinite spousal maintenance when Wife received $1,100,000 in liquid assets which will provide her investment income and enable her to exceed the marital standard of living, while Husband, in order to pay the $988,875 equalizing judgment owing to Wife and also pay known business expense increases will have substantially less income to pay spousal maintenance."

ORS 107.105(1)(d)(C) provides a nonexhaustive list of factors that the court may consider in deciding on an award of spousal maintenance:

"(i)    The duration of the marriage;

"(ii)    The age of the parties;

---

[2] That amount is based on an assumed six percent interest rate and 30-year amortization period for the necessary loans to pay the judgment.

"(iii) The health of the parties, including their physical, mental and emotional condition;

"(iv) The standard of living established during the marriage;

"(v) The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi) A party's training and employment skills;

"(vii) A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix) The tax consequences to each party;

"(x) A party's custodial and child support responsibilities; and

"(xi) Any other factors the court deems just and equitable."

In making a maintenance spousal support determination, "[n]o one factor is dispositive." *Arand and Arand*, 182 Or App 368, 374, 49 P3d 799 (2002). However, in a long-term marriage such as this, the primary goal of maintenance spousal support is to provide a standard of living comparable to that enjoyed during the marriage. *Mallorie and Mallorie*, 200 Or App 204, 219-20, 113 P3d 924 (2005), *rev den*, 340 Or 18 (2006). We begin our analysis by noting that this court takes seriously its practice of not micro-managing trial court decisions that disentangle the economic affairs of divorcing spouses, unless we can meaningfully improve on such decisions. *See, e.g., Thompson and Thompson*, 204 Or App 53, 60, 129 P3d 189 (2006); *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003); *Bidwell and Bidwell*, 170 Or App 239, 242, 12 P3d 76 (2000), *adh'd to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001).[3] That said, in this case,

---

[3] As we recently stated in *Gardner and Gardner*, 212 Or App 148, 156-57, 157 P3d 320 (2007):

"There are good reasons for that practice, including the fact that a different array of circumstances exists in every dissolution action, making fact-matching especially treacherous. More importantly, a marital dissolution is

although the trial court's findings demonstrate that the court was cognizant of the relative "cost and benefit" to the parties of the equalizing judgment, there is nothing in the record from which we can determine how those circumstances factored into the trial court's decision to award $7,000 per month in spousal support to wife. Our own consideration of the circumstances suggests a significantly lower amount. Thus, our adjustment to the award that the trial court made is based on our concern, elaborated below, that the spousal support award falls outside the range of reasonableness by a significant enough margin so as not to be just and equitable in the totality of pertinent circumstances.

The cornerstone of our concern begins with husband's description of the financial effect of the award on the parties' "net incomes." Although we do not accept husband's assumptions in their entirety, his description marks our point of departure. According to husband, the effect of a $7,000 per month spousal support award on the parties' net incomes would be as follows:

| WIFE'S INCOME: | | HUSBAND'S INCOME: | |
|---|---|---|---|
| Earned Income | $ 32,760 | Earned Income in 2003 | $274,879 |
| Unearned Income | $ 66,000 | Less Increased Expenses | [$ 74,684] |
| Spousal Support | $ 84,000 | Less Spousal Support | [$ 84,000] |
| Total | $182,760 | Total | $116,195 |
| Less Income Taxes | [$ 63,966] | Less Income Taxes | [$ 40,668] |
| | | Less Judgment | [$ 71,148] |
| **Spendable Income** | **$118,794** | **Spendable Income** | **$ 4,379** |

In sum, husband asserts that the trial court's award would leave wife with annual spendable income of $118,794 and would leave him with annual spendable income of $4,379. Husband's estimate of wife's income is based, in part,

---

more than the mere liquidation of an economic partnership; it involves the calibration of multiple socio-economic objectives with respect to which trial courts have a range of reasonable discretion to fashion an equitable outcome. * * * Thus, depending on the circumstances, there often can be more than one overall economic solution that would withstand an appeal from a dissolution judgment. * * * This jurisprudential approach serves both as an invitation to principled arguments and a statement of self-restraint in favor of stability."

(Footnotes omitted.)

on the assumption that she could invest her equalizing judgment award and other liquid nonretirement assets at approximately six percent per annum, yielding her annual pretax income of $66,000 from those sources. *If* we were to adopt those assumptions, wife's investment income together with her employment income would total, after taxes, approximately $65,000 per year ($5,438 per month), which, husband asserts, would be sufficient to cover wife's monthly expenses of $4,900, as husband attempted to deconstruct them at trial.

There are several difficulties with husband's assumptions. First, ORS 107.105(1)(d)(C) requires the consideration of multiple factors—not merely the parties' respective incomes and anticipated expenses. This is, after all, a 34-year marriage, and wife was a homemaker during the marriage and the primary parent for the children, with consequent effects on her ultimate earning capacity. In addition, notwithstanding husband's efforts to minimize the standard of living that the parties enjoyed during the marriage, we agree with the trial court's finding that they lived quite comfortably.

However, the most fundamental flaw in husband's analysis of wife's income is his assumption that all of the liquid nonretirement assets awarded to wife would be available to her for investment. Wife did not receive any real property in the property division. Wife claimed $1,005 per month in housing expenses in her uniform support affidavit. She was renting an apartment at the time of trial. Wife testified that she wanted to purchase a "comfortable" home, but that she was not able to do so at the time of trial. Instead, she stated that she needed to wait until the outcome of this action was known before she could make any decision. Although it is true, as husband asserts, that there is no evidence as to what amount wife might spend on a residence, it is reasonable to infer that she would be required to spend a significant portion of her liquid assets on such an acquisition. Thus, there is no basis in the record to infer that wife would have anything approaching a million dollars to invest after purchasing a residence. If wife spent only half of that amount to purchase a residence with amenities comparable to the 4,000-square-foot home that the parties owned during the marriage, husband's projection of her pretax passive annual income would

be reduced from approximately $66,000 to approximately $33,000. Such an adjustment alone would reduce wife's projected annual net income, including the trial court's spousal support award, from $118,794 to $97,344. Although husband might complain that such a reduction is speculative and, in truth it is, that objection misses the point that husband's own projection is not only speculative but unrealistic in view of wife's known intention to buy a residence of her own.

There are also at least two significant difficulties with husband's assumptions with respect to his own income. First, he deducted $74,684 for projected increased business expenses. We reject that deduction because it is inconsistent with the trial court's finding, with which we agree, that husband's earned income in 2003, $274,879, most accurately forecasts his future net pretax business income. Accordingly, we find that husband's annual spendable income, adjusted for the spousal support award that the trial court made, would be approximately $79,063, not $4,379.[4] Second, although the deduction of the equalizing judgment payment is realistic for the purpose of measuring husband's *spendable* income, the cash flow expense that husband must incur to finance the judgment is necessary to equalize the property division; the fact that it reduces husband's spendable income is a necessary consequence of the property division that the court effected and which husband does not challenge on appeal.

The foregoing adjustments to husband's estimates would leave wife with more spendable income than husband based on the spousal support award that the trial court made, but by a much smaller margin than husband suggests. By contrast, using the 35 percent blended income tax rate that the evidence showed was reasonable, the $7,000 per month support award that the trial court ordered would leave wife with projected after-tax annual income before

---

[4] We readily acknowledge that the exercise in which we have engaged is fraught with assumptions that may not prove out. That uncertainty is partly owing to the nature of the record before us but, more fundamentally, it is the inevitable product of a concatenation of both interdependent and unrelated estimates that dance at the edges of speculation. In short, even where arithmetic calculations are concerned, the assessment of a spousal support award is often far from an exact science.

other expenses of $97,344 (total income, including spousal support, of $149,760 x .65). Husband, on the other hand, would have projected after tax annual income before other expenses of $124,071 (total income, excluding spousal support, of $190,879 x .65).

■■ As discussed, our task in setting maintenance support is not merely to consider the parties' respective incomes, however calculated. Factors such as the length of the parties' marriage; the marital standard of living; the parties' relative earning capacities; the nature of the property division; and the parties' expenses also inform our decision in this case. Contrary to husband's view, those factors, in their totality, militate in favor of a substantial and indefinite award of maintenance spousal support. Even so, husband received the riskier assets in the property division, and he faces a substantial debt burden in order to finance the equalizing judgment. Moreover, the purpose of an award of spousal support is not to eliminate all disparities in the parties' incomes. *Grove and Grove,* 280 Or 341, 351, 571 P2d 477, *modified,* 280 Or 769, 572 P2d 1320 (1977); *Ley and Ley,* 133 Or App 138, 141, 890 P2d 440 (1995); *Christensen and Christensen,* 123 Or App 412, 416, 859 P2d 1192 (1993). Rather, as discussed, the aim of indefinite maintenance spousal support is to enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible. *Mallorie,* 200 Or App at 219-20; *Roppe and Roppe,* 186 Or App 632, 637-38, 64 P3d 1145 (2003); *McCarthy and McCarthy,* 170 Or App 183, 190, 12 P3d 519 (2000).

Here, that goal is achievable at a lower support level than the trial court imposed. When the parties' circumstances are considered in their totality, we conclude that an indefinite maintenance award of spousal support in the amount of $5,000 per month is just and equitable. ORS 107.105(1)(d). Such an award will leave wife with projected after-tax annual income before expenses of $81,744 (total income, including spousal support, of $125,760 x .65), an amount that exceeds her actual expenses, coupled with the security of a highly liquid, low-risk property division. That division of income and property will provide wife with a standard of living not overly disproportionate to the one that the

parties enjoyed during the marriage. Husband, on the other hand, will have projected after-tax annual income before expenses of $139,671 (total income, excluding spousal support, of $214,879 x .65), an amount that is substantially mitigated by the debt burden, including interest, that he must shoulder in order to cash out wife's share of the property division.

Reversed and remanded for entry of amended judgment awarding wife indefinite maintenance spousal support of $5,000 per month from date of original judgment; otherwise affirmed. Affirmed on cross-appeal.